UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DR. GERALD FINKEL, as Chairman of the Joint
Industry Board of the Electrical Industry,

                                          Plaintiff,         **REPORT AND**
                -v-                                        **RECOMMENDATION**

ALLTEK SECURITY SYSTEMS GROUP, INC.,      10-CV-4887 (DLI) (VVP)

                                        Defendant.
-----------------------------------------------------------------x

POHORELSKY, Magistrate Judge:

       The Honorable Judge Irizarry referred this matter to me for a report and recommendation as to whether default judgment is appropriate, and if so, as to the amount of damages to be awarded to the plaintiff Dr. Gerald Finkel, as Chairman of the Joint Industry Board of the Electrical Industry ("Joint Board"), against the defaulting defendant, Alltek Security Systems Group, Inc. ("defendant," "employer" or "Alltek"). The plaintiff filed this action in October 2010 pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq*. ("ERISA"), and the Labor Management Relations Act of 1947 (the "Taft-Hartley Act" or "LMRA"), 29 U.S.C. § 185, for alleged violations of collective bargaining agreements (the "CBAs"). The plaintiff seeks to recover delinquent contributions owed to numerous employee benefit funds to which Alltek was obligated to make monetary contributions pursuant to the CBAs as well as interest and other statutory damages available under ERISA. *See* Complaint ¶¶ 23-26.

**I.    ENTRY OF DEFAULT JUDGMENT**

       "It is well established that a party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of Southern Connecticut, Ltd. Partnership, v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) *quoting Shah v. N.Y. State Department of Civil Services,* 168 F.3d 610, 615 (2d Cir. 1999). When deciding whether to enter default the court considers various factors, including (1)

the amount of money involved; (2) whether issues of fact or of substantial public importance are at stake; (3) whether the default is largely technical; (4) whether the plaintiff has been substantially prejudiced by the delay; (5) whether the grounds for default are clearly established; (6) whether the default was caused by a good-faith mistake or excusable neglect; (7) how harsh an effect default would have; and (8) whether the court believes it would later be obligated to set aside the default on defendant's motion. *Smith*, 141 F. Supp. 2d at 281-82 (*citing* 10 Moore's Federal Practice § 55.20 [2][b] (3d ed. 1999)). In civil actions, when a party fails to appear after given notice, the court normally has justification for entering default. *Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir. 1984).

The plaintiff has filed an affidavit of a licensed process server attesting to service of the summons and complaint in this action on the defendant in accordance with the provisions of Section 311(a)(1) of the New York Civil Practice Law and Rules. Such service is authorized by Rule 4(c)(1) of the Federal Rules of Civil Procedure. The defendant has failed to interpose an answer, or otherwise respond to the complaint. Decl. of David R. Hock in Supp. of Pl. Mot. for Default, Dec. 15, 2010, Dkt No. 4. Nor has the defendant responded to the plaintiff's application for default. The grounds for default are therefore clearly established, and there are no grounds for believing the default is based on a good-faith mistake or technicality. *See Cablevision Systems New York City Corp. v. Leath*, No. 01-CV-9515, 2002 WL 1751343, at *2 (S.D.N.Y. July 26, 2002) (default willful where defendant never responded to complaint, appeared or explained default). Finally, based on the defendant's inaction, it is unlikely that the court will be compelled at some future date to enter an order vacating the default judgment. Judgment by default should therefore be granted so long as liability and damages are appropriately established.

## II.  LIABILITY

By virtue of the defendant's default, the well-pleaded allegations of the Complaint are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 81 n.1 & 83 n.6 (2d Cir. 2009); *Greyhound Exhibitgroup, Inc. v.*

*E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). While the court is required to accept the allegations of fact in the Complaint as true and draw all reasonable inferences in the plaintiff's favor, it is also required to determine whether those allegations establish the defendant's liability as a matter of law. *Romanowicz*, 577 F.3d at 84.

The Joint Board is an administrator and fiduciary of various employee-benefit funds established by the CBAs between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union"), and employers supplying electrical services, including the defendant. Compl. ¶¶ 4-5. The defendant signed a series of Letters of Assent agreeing to be bound to the terms of the CBAs between the New York Electrical Contractors Association, Inc. and the Union for the work covered by those agreements. Compl. ¶¶ 11-12. The Letters of Assent are dated April 7, 2004, January 29, 2007, and June 19, 2009, and bound the Company to the relevant CBA as well as any subsequently approved agreements between the Association and the Union until and unless the Company notified the Union of its intent to terminate in writing. Compl. ¶ 12. The most recent Letter of Assent continues to be in effect and the defendant has not notified the Union of its intention to terminate the agreement. The Union and the Association are thus bound to the terms of collective bargaining agreements for the periods of May 10, 2001 through May 13, 2004 ("2001 CBA"), May 13, 2004 through May 10, 2007 ("2004 CBA"), and May 10, 2007 through May 13, 2010 ("2007 CBA"), as well as a successor agreement effective May 14, 2010 ("2010 CBA"). Compl. ¶¶ 12-15; Decl. of Christina A. Sessa, dated Jan. 25, 2011 ("Sessa Decl.") ¶¶ 3-8 & Exs. A-G.

The CBAs obligate Alltek to remit on a weekly basis contributions to the Joint Board for the employee benefit plans ("the ERISA plans") administered by the Joint Board, including a 401(k) Plan.[1] Compl. ¶¶ 5-6; Sessa Decl. ¶ 8 & Exs. H-N (governing trust agreements of the

---

[1] The ERISA Plans are the Pension, Hospitalization and Benefit Plan of the Electrical Industry ("PHBP"), the Dental Benefit Fund of the Electrical Industry ("DEN"), the Deferred Salary Fund of the Electrical Industry ("401(k) Plan"), the Educational and Cultural Trust Fund of the Electrical Industry ("E&C"), the

ERISA Plans). Pursuant to the CBAs, employers are required to deduct a specified percentage from the weekly wages of each eligible employee covered by the collective bargaining agreement and to remit such amounts plus additional salary deferrals made at the election of the employee to the 401(k) Plan, along with related payroll reports. Employers are also required to remit employer contributions to the 401(k) Plan on behalf of all covered employees. Complaint. ¶ 6. Pursuant to the CBAs, the Joint Board also collects contributions to certain non-ERISA plans (the "Non-ERISA Plans").[2] The required contributions to the ERISA and non-ERISA plans together are referred to as the "Required Contributions," and all of the plans are referred to together as "the Plans." The Complaint also alleges that the employer is obligated to remit union dues assessments and employee loan repayments due to the Union. *See* Compl. ¶ 7; Sessa Decl. ¶¶ 9-10.

The employer is also required to submit payroll reports for all of the Plans (the "Payroll reports"). Thus, for all of the Plans except for the 401(k) Plan, Alltek must submit payroll reports to the Joint Board that provide the name, gross wages, and hours worked for each worker employed by the Company who performed work covered by the CBA. Compl. ¶¶ 17-18; Sessa Decl. ¶¶ 14-26. For the 401(k) Plan, the Company is required to submit payroll reports to Mercer (a third-party record keeping company) that set forth the amounts of employee contributions and employer contributions and loan repayments being deducted from employee wages. *Id.*

The Joint Board has adopted a delinquent contribution policy calling for the assessment of interest on late-paid contributions due and owing to the Plans, at the rate established by those Plans or in accordance with Section 6621 of the Internal Revenue Code, 26 U.S.C. § 6621.

---

Annuity Plan of the Electrical Industry ("ANN"), the Health Reimbursement Account Plan of the Electrical Industry ("HRAP"), and the National Employees Benefit Fund ("NEBF").

[2] The Non-ERISA Plans are the Electrical Employers Self Insurance Safety Plan ("EESISP"), the Benefit and Wage Delinquency Fund ("Delinquency Fund"), and contributions to fund the operations of the Joint Board ("JT Board").

Compl. ¶¶ 21-22; Sessa Decl. ¶ 36 & Exhibit X (minutes of a meeting of the Pension Committee of the Joint Board indicates that the Board adopted the "IRS rate set forth to the corporate overpayments and underpayments [illegible] for the Pension Trust Fund, Pension Hospitalization and Benefit Plan and Dental Benefit Fund"), Exhibit Y (minutes of Joint Board meeting indicating adoption of "IRS rate for delinquent contributions").

The plaintiff alleges that the defendant violated ERISA by (1) failing to remit contributions to the ERISA Plans and to submit the weekly Payroll Reports for the weeks ending April 21, 2010 through June 16, 2010, Compl. ¶¶ 23-26, 41-44; (2) by failing to pay $14,655.25 in plan contributions for the weeks ending April 1, 2004 through April 4, 2007, Compl. ¶¶ 27-31, 41-44; and (3) failing to remit employee contributions to the 401(k) Plan and allowing those 401(k) Plan assets to be retained in, and commingled with, the defendant's general assets in violation of its fiduciary duty, Compl. ¶¶ 45-50. The plaintiff also alleges that the failure to remit contributions and the late payment of some contributions constitute breaches of the CBAs and violations of the LMRA. *See* Compl. ¶¶ 32-38, 51-52.

**A. First Cause of Action: Liability under Section 515 of ERISA**

The facts alleged in the Complaint as to the defendant's failure to remit the Required Contributions in accordance with the agreed terms are sufficient to establish the defendant Alltek's liability for violations of ERISA. Under the ERISA statute, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145 (Section 515 of ERISA). "If an employer fails to make required contributions, a fiduciary of the plan may sue the employer, or another fiduciary of the plan, as that term is defined under ERISA, to recover the unpaid contributions." *Romanowicz*, 577 F.3d at 85 (citing 29 U.S.C. §§ 1132, 1109). It is undisputed that the plaintiff brings this suit on behalf of the employees as a fiduciary of the Plans. Compl. ¶¶ 1, 4. The defendant is both an employer as defined in ERISA (See Compl.

¶10) and a fiduciary of the Plan (see below) and its failure to remit the contributions as required by the CBAs makes it liable under ERISA.

### B. Second and Third Causes of Action: Breach of Fiduciary Duty

The allegations in the Complaint are also sufficient to establish that, solely with respect to employee contributions to the 401(k) Plan, the defendant violated fiduciary duties imposed on it by ERISA by failing to segregate employee contributions to the Plan from its general assets and remit them to the 401(k) Plan on time. *See* Compl. ¶¶ 45-50.

The plaintiff has established that the defendant's role in remitting employee contributions to the 401(k) Plan make it a fiduciary within the definition of ERISA. The Second Circuit has recognized that "Congress intended ERISA's definition of fiduciary 'to be broadly construed.'" *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (quoting *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987)). Nonetheless, a plaintiff seeking to impose fiduciary status on a defendant must allege that the defendant "engaged in, or had the authority to engage in, any activities that would make him a fiduciary" as defined in the ERISA statute. *Romanowicz*, 577 F.3d at 86-87. Such allegations would include averments that the defendant "selected investments or exchanged one instrument for another," was "responsible for determining which of the company's creditors would be paid or in what order," or "otherwise enjoyed authority or control over the *management* of 401(k) Plan assets." *Id.* at 87 (internal quotation marks and alterations omitted, emphasis in original) (quoting *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002) and *LoPresti*, 126 F.3d at 40).[3] In this vein, corporate officers who had authority to sign checks on the company's behalf but had no role in determining "which of the company's creditors would be paid or in what order" were not fiduciaries under the ERISA statute. *LoPresti*, 126 F.3d at 40-41; *see also Romanowicz*, 577

---

[3] Under the ERISA statute, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets. . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). The definition of "person" extends to corporate entities. *See id.* at § 1002 (9).

F.3d at 86-87 (citing *LoPresti* and reaching the same result). Here, the plaintiff's suit is not brought against corporate officers, but rather the corporation itself, which "unquestionably had the authority to determine 'which of [its] creditors would be paid or in what order.'" *See Finkel v. Union Elevator Corp.*, No. 07–CV–2227, 2011 WL 1642580, at *4 (E.D.N.Y. Mar. 14, 2011) (analyzing Second Circuit case law and determining that corporation's authority to control its own assets and their distribution was sufficient to confer fiduciary status) (quoting *LoPresti*, 126 F.3d at 40), *report and recommendation modified in part on other grounds*, 2011 WL 1655573 (E.D.N.Y. May 2, 2011).

The defendant's failure to remit funds withheld from employee wages to the 401(k) Plan constituted a breach of its fiduciary duties. Under ERISA, "all assets of an employee benefit plan shall be held in trust," 29 U.S.C. § 1103(a), "for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan," *id.* § 1103(c)(1). Moreover, ERISA requires that a fiduciary of a 401(k) plan "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and act "with the care, skill, prudence and diligence" of a prudent person in a similar capacity in discharging those duties. 29 U.S.C. § 1104(a)(1)(A)(i), (B). The withheld employee contributions here became plan assets "'as of the earliest date on which such contributions [could] reasonably be segregated from the employer's general assets.'" *Romanowicz*, 577 F.3d at 86 n.8 (quoting 29 C.F.R. §2510.3-102); *Union Elevator Corp.*, 2011 WL 1655573, at *3. Thus, the defendant's failure to segregate the plan assets and remit them to the 401(k) Plan breached its duty to hold the assets in trust and to ensure that those assets did not "inure to the benefit of any employer." *See* 29 U.S.C. § 1103(c)(1). As a result of this breach, the 401(k) Plan and its beneficiaries have suffered losses for which the defendant is liable. *See* 29 U.S.C. § 1109 (imposing personal liability on fiduciaries for breach).[4]

---

[4] The plaintiff correctly brings its breach of fiduciary claim based on the failure to remit *employee*, as opposed to *employer*, contributions to the 401(k) Plan. This distinction is crucial to the court's finding that the plaintiff's claim is viable because the fiduciary obligation described in the statute and in the

### C. Fourth Cause of Action: Section 301 of the LMRA

The pleadings also establish that the defendant is liable under Section 301(a) of the LMRA, which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The defendant's failure to remit (and late payment of) contributions to the Plans is a breach of the CBAs entitling the plaintiff to damages. *See* Compl. ¶ 52; *Brown v. C. Volante Corp.*, 194 F.3d 351, 354 (2d Cir. 1999); *Baldracchi v. Pratt & Whitney Aircraft Div., United Technologies Corp.,* 814 F.2d 102, 104 (2d. Cir. 1987).

### III. DAMAGES

With respect to contributions owed to employee benefit funds, Section 502(g)(2) of ERISA provides for recovery of

    (A)    the unpaid contributions

    (B)    interest on the unpaid contributions

    (C)    an amount equal to the greater of –

        (i) interest on the unpaid contributions, or

        (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State Law) of the amount determined by the court under subparagraph (A),

    (D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E)    such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Damages under Section 502(g)(2) are mandatory once liability is established in favor of an employee benefit plan seeking to enforce Section 515. *Id.*; *Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506-08 (2d Cir. 1995).

---

regulation would extend fiduciary status only to plan contributions that are withheld from employee wages, not those that are independently contributed by the employer.

Regardless of the mandatory nature of the statutory damages sought here, Federal Rule 55(b) requires the court to make an independent assessment of damages when deciding a motion for default judgment. *See Securities & Exch. Comm'n v. Management Dynamics, Inc.,* 515 F.2d 801, 814 (2d Cir. 1975). Damages are proven through an evidentiary hearing, or through affidavits and other documentary submissions that provide a factual basis for determining the amount of damages to be awarded. *See Greyhound*, 973 F.2d at 158; *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997). Having provided notice to the defaulting defendant, the court is able to receive affidavits in lieu of holding an evidentiary hearing on damages. *See, e.g., Transatlantic Marine,* 109 F.3d at 111 ("We have held that, under Rule 55(b)(2), it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.") (internal citations omitted). There being no objection by any party to that procedure, the court has received and considered the declarations submitted by the plaintiff. The defendant has made no submissions as to damages. The plaintiff has provided the court with two affidavits in support of their request for damages – (1) the Declaration of Christina A. Sessa, who, as Associate Counsel to the Joint Board, oversees matters relating to employers' obligations to remit contributions to the Joint Board for employee benefit plans, among other things, Decl. of Christina A. Sessa, dated Jan. 25, 2011, ¶ 1 (Dkt No. 9) ("Sessa Decl."); and (2) the Declaration of Evan Hudson-Plush, who is an associate at the law firm representing the plaintiff, Declaration of Evan Hudson-Plush, dated Jan. 28, 2011, ¶ 1 (Dkt No. 10) ("Hudson-Plush Decl."). The plaintiff's submissions provide an adequate basis to award the damages as set forth in the sections that follow.

**A. Audit Deficiency**

According to the Sessa Declaration, an audit of the defendant's books and records by the Joint Board for the weeks April 1, 2004 through April 4, 2007 (the "Audit Period") showed that the defendant failed to report $23,417.30 in wages during that period and owes unpaid contributions in the amount of $14,655.25. By letter dated July 16, 2010, the Joint Board

notified the defendant of its findings, demanded payment, and provided a copy of the audit report.  Attached to the Sessa Declaration is a summary of the audit's findings, which details the distribution of that total amount across the four calendar years.  *See* Sessa Decl., ¶¶ 30-34 & Ex. W; Compl. ¶¶ 27-29.  To date, the defendant has not paid these delinquent contributions.  *Id.* ¶ 34.  On the basis of the information in the Sessa Declaration as well as in the audit summary, the plaintiffs should be awarded $14,655.25 in unpaid contributions for the Audit Period.

### B.  Unpaid Contributions

The Funds are also seeking damages for unpaid ERISA and non-ERISA contributions covering the period of weeks ending April 21, 2010 through June 16, 2010.  Sessa Decl. ¶¶ 27-29.  The contribution rate for these plans is established by the CBAs, except for the EESISP contributions, dues assessments, and employee loan repayments.  *See* Sessa Decl. ¶¶ 10-13.  The contribution rate for the EESISP is established by the Trustees of that plan and depends on the type of work performed.  *Id.* Ex. O.  These contributions are reflected in payroll reports submitted by the company to the Joint Board and the 401(k) Plan contributions are reflected in a separate weekly payroll report that the defendant submits to Mercer.  *See, e.g., id.* Exs. Q-U.  While the obligation to make the contributions to the various Plans is reflected in the CBAs, the plaintiff has not pointed to any written document evidencing the employer's agreement to pay "union dues and employee loan repayments" (Compl. ¶ 7).  The plaintiff points only to two documents to support recovery of these amounts:  (1) a payroll report that reflects the payment of dues and loan repayments in prior periods (See Sessa Decl. Ex. R) and (2) a letter from the Joint Board dated March 13, 1997 regarding a change in the contribution amount of "working assessment" for certain employees (See Sessa Decl. ¶ 12 & Ex. P).  A review of the CBAs reveals only that the 2010 CBA, effective May 14, 2010, has a provision authorizing the Joint Board to collect "dues assessments" and "loan repayments" that the "employer agrees or is obligated to deduct from the employees' paychecks."  Sessa Decl. Ex. G, at 21 Art II, Sec. 17.  There is no document evidencing the employer's agreement to pay any specific amounts of union dues or loan repayments.  Because the plaintiff has failed to provide the court with evidence of

an agreement obligating the defendant to remit the union dues or loan repayments sought here on behalf of the employees, the recovery for unpaid contributions in this period should be reduced by those amounts. *See Brown*, 194 F.3d at 355 ("an unsigned written agreement" satisfies ERISA where it sets forth "'a detailed basis on which . . . payments are to be made'") (quoting Section 302(c)(5)(B) of ERISA); *Cf. Lanzafame v. Dana Restoration, Inc.*, No. 09-CV-0873, 2010 WL 6267657, at *1-2 (E.D.N.Y. Aug. 12, 2010) (awarding "unpaid union dues" where the terms of the CBAs specified the amount of union dues and when they were due), *report & recommendation adopted by* 2011 WL 1100111 (E.D.N.Y. March 22, 2011).

Because the defendant failed to submit payroll reports for this period the plaintiff makes its request for damages by estimating the amount of contributions that the employees are owed. When an employer has failed to submit payroll reports reflecting the amount of delinquent contributions, it is appropriate to use reasonable estimates of the amounts due based on prior reports. *See, e.g., Jacobson v. Empire Elec. Contractors, Inc.*, 339 Fed. Appx. 51, 54-55 (2d Cir. 2009) (remanding to district court to estimate unpaid contributions by using the most recent payroll report); *Finkel v. Jones Lang LaSalle Americas, Inc.*, No. 08-CV-2333, 2009 WL 5172869, at *4 & n.1 (E.D.N.Y. Dec. 30, 2009) (finding "reasonable" the "Joint Board's practice to estimate the contributions due based on the last weekly payroll report submitted by the company"); *Finkel v. Tech Man, Inc.*, No. 06-CV-2264, 2007 WL 433399, at *2 (E.D.N.Y. Feb. 6, 2007) ("To calculate those missing payments, the Joint Board may use the most recent payroll report submitted by the Company to estimate the amount of contribution due.") (internal quotations omitted). Here, the Joint Board estimated the contributions due for these weeks by using the Company-reported amounts in the last report submitted by the defendant from the week ending April 14, 2010. *See* Sessa Decl. at ¶ 29 & Exs. Q to U; Hudson-Plush Decl. ¶ 9 & Ex. A. The plaintiff multiplied the amount due in the April 14, 2010 report for each Plan by the nine weeks of unpaid contributions. The following chart, which is identical to that provided by the plaintiff with the omission of "Dues" and "Loan Repayments," breaks out the calculation by Plan and has been verified by the court as accurate:

- 11 -

| Plan | Contributions Due |
|---|---|
| PHBP | $25,399.44 |
| DEN | $2,158.47 |
| ANN | $8,694.00 |
| E&C | $733.50 |
| NEBF | $2,130.03 |
| JT Board | $710.01 |
| Delinquency Fund | $355.05 |
| EESISP | $2,840.04 |
| 401(k) Plan[5] | $25,801.56 |
| **Total Required Contributions** | **$68,822.10** |

Hudson-Plush Decl., ¶ 9 & Ex. A. Accordingly, I recommend that the plaintiff recover $68,822.10 in unpaid contributions for the Plans for the weeks ending April 21, 2010 through June 16, 2010.

### C. Interest

The plaintiff has also sought interest on the unpaid contributions under ERISA and for the late paid contributions under the LMRA.

#### a. Interest on Unpaid Contributions and Audit Deficiency

The plaintiff is also entitled to statutory interest on contributions due to the Plans that were unpaid when the suit was filed. See 29 U.S.C. § 1132(g)(2)(B). In determining interest owed on unpaid benefit contributions, ERISA directs courts to use the "rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2); *see also Carney v. Prompt Maintenance Services, Inc.*, No. 98-CV-8163, 2002 WL 122934, at *6 (S.D.N.Y. Jan. 30, 2002). Here, only the NEBF has specified the adoption of a ten percent interest rate. *See* Hudson-Plush Decl. ¶ 11; Sessa Decl. Ex. N at 11, § 6.9.3. Accordingly, for the remaining Plans, it is appropriate to look to the rate set out in 26 U.S.C. § 6621(a), which,

---

[5] The 401(k) Plan Report Summaries list the weekly total amount deferred by the employees and the total amounts of employer contributions, which, when added together, represent the weekly 401(k) Plan contributions due. *See* Sessa Decl. Ex. U.

according to the plaintiff's submissions, was 4% when the complaint was filed.  *See* Hudson-Plush Decl. ¶ 11 & Ex. B.

The plaintiff's proposed calculation of the interest owed, however, is not entirely accurate.  The plaintiff has calculated interest by multiplying the amount of contributions owed by the applicable interest rate, multiplied by the number of days between the week ending date of a payroll period and January 28, 2011 when the calculation was performed.  According to the Complaint, while each week ends on a Wednesday, the Plan reports and required contributions are due the following Tuesday.  Compl. ¶ 19.  Accordingly, the appropriate days of interest would be the number of days between the Tuesday after the week ending date of a payroll period and January 28, 2011.  *See Carney*, 2002 WL 122934, at \*6; *DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1041 (E.D.N.Y. 1993) (interest is calculated from the date the delinquent contributions became due), *remanded on other grounds*, 38 F.3d 651 (2d Cir. 1994).  The court has recalculated the interest owed by subtracting the additional six days of interest calculated by the plaintiff.  The court has also omitted the recovery of interest for "Dues" and Loan Repayments," because, as discussed above, the plaintiff has not established that the defendant was contractually obligated to pay these amounts.  The revised calculations are reflected in the chart below.

| Plan | Interest on Unpaid Required Contributions Due | Per Diem Interest on Unpaid Required Contributions Due |
|---|---|---|
| PHBP | 690.28 | 2.79 |
| DEN | 58.46 | 0.27 |
| ANN | 236.07 | 0.99 |
| E&C | 19.88 | 0.09 |
| NEBF | 151.20 | 0.54 |
| JT Board | 19.23 | 0.09 |
| Delinquency Fund | 9.90 | 0.00 |
| EESISP | 77.44 | 0.03 |
| 401(k) Plan | 701.46 | 0.31 |
| **Total Required Contributions** | **$1,963.92** | **$5.11** |

Hudson-Plush Decl., ¶ 13 & Ex. A.  Accordingly, I recommend that the plaintiff recover interest on the unpaid contributions for the weeks ending April 21, 2010 through June 16, 2010 in the amount of $1,963.92, plus $5.11 *per diem* interest starting January 29, 2011 to the date judgment is entered.

For the Audit Period, the plaintiff has calculated interest on unpaid contributions for all of the weeks between April 1, 2004 and April 4, 2007 from the end date of the last payroll period.  *See* Hudson-Plush Decl. ¶ 15 & Ex. C.  Since this calculation appears to underestimate rather than overstate the interest due, the court recommends that the plaintiff recover the full amount of the interest requested of $2,462.30 for the Audit Period plus $1.72 in *per diem* interest from January 29, 2011 to the date of judgment.

### b. Interest on Required Contributions Paid Late Prior to the Commencement of the Action

The plaintiff argues that pursuant to the LMRA and in accordance with its contractual obligations, the defendant owes interest for the payroll contributions to the 401(k) Plan that were paid late before the lawsuit was filed in the amount of $58.20.  By letter dated October 15, 2010, the Joint Board requested that the defendant remit this interest, but the defendant has failed to pay it.  Sessa Decl. ¶ 37 & Ex. Z.  There is no statutory basis under ERISA to award interest on delinquent contributions that were paid before the suit was filed.  *Iron Workers*, 68 F.3d at 1507 (noting that a § 1132(g)(2) suit cannot "be commenced in the absence of unpaid contributions").  Thus, to the extent a plaintiff demonstrates that the failure to make those contributions in a timely manner violated the CBAs, he can recover under the LMRA for breach of those agreements.  *See Union Elevator Corp.*, 2011 WL 1642580, at *3 (citing cases).  Here, the plaintiff has attached meeting minutes of the Joint Board where the Board adopted the interest rate established by the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 6621, for delinquent contributions.  *See* Sessa Decl. ¶ 36 & Exs. X, Y.  Although the plaintiff has not directed the court to any authority in the CBAs or the trust agreements permitting the Joint Board to amend those agreements in this manner, the court undertook an independent review of the

documents and determined that the trust agreement governing the 401(k) Plan gives the Joint Board broad authority to amend the plan, which would include the adoption of interest for late-paid contributions. *See* Sessa Decl. Ex. Ex. J, Art. VI.

Accordingly, the plaintiff should recover $58.20 in interest for late payments to the 401(k) Plan that were paid before the lawsuit was filed.

### D. Liquidated Damages

The plaintiff also seeks liquidated damages under ERISA. Pursuant to Section 502(g)(2) of ERISA, the Joint Board is entitled to collect liquidated damages in the amount equal to the greater of the interest due on the unpaid and late-paid ERISA Plan contributions or liquidated damages in the amount provided for in the plan, not to exceed 20 percent of the delinquent contributions at the time the suit was filed. *See* 29 U.S.C. § 1132(g)(2)(C). The CBAs here state that the Joint Board is entitled to an amount equal to twenty percent of the delinquent contributions due to each ERISA Plan and the plaintiff seeks that amount. *See* Hudson-Plush Decl. ¶ 17-20 (citing Sessa Decl. Ex. E at 17 § 13; Ex. F at 18 § 12(a); Ex. G at 19 § 12(a), Ex. H at 20 § 5.05(c)(iii)).

The plaintiff has provided an affidavit of its counsel attaching a breakdown of liquidated damages for unpaid contributions due to each of the ERISA Plans. According to this calculation, twenty percent of the unpaid contributions to the ERISA Plans for the Audit Period is $2,589.95 and twenty percent of the remaining unpaid contributions to the ERISA Plans (estimated as described above) is $12,983.40. Hudson-Plush Decl. ¶¶ 19-21 & Exs. A, C. The court has reviewed these calculations, and, finding them to be accurate, recommends that the plaintiff recover a total of $15,573.35 in liquidated damages.

### E. Attorneys Fees and Costs

The plaintiff also seeks attorneys' fees and costs, both of which are available under ERISA. *See* 29 U.S.C. § 1132(g)(2)(D); *Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004). To aid the court in determining the amount of reasonable attorneys' fees, plaintiffs must submit evidence providing a factual basis for a fee award. *Hensley v. Eckerhart,*

461 U.S. 424, 433-434 (1983). This Circuit requires contemporaneous billing records for each attorney, documenting the date, the hours expended, and the nature of the work. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48, 1154 (2d Cir. 1983). The court must ensure that the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 186-191 (2d Cir. 2008) (establishing the presumptively reasonable fee determination); *Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir. 1997). Where adequate records are not submitted, the court may reduce the award or deny fees altogether. *See Carey*, 711 F.2d at 1148; *Private Sanitation Union Local 813, International Brotherhood of Teamsters v. Gaeta-Serra Associates, Inc.*, No. 02–CV-5526, 2005 WL 2436194, at *3-4 (E.D.N.Y. Aug. 12, 2005), *report and recommendation adopted by* 2005 WL 2429311 (E.D.N.Y. Sept. 30, 2005). In addition, the court may exclude hours that it finds excessive, duplicative, or unnecessary. *Duke v. County of Nassau,* 97-CV-1495, 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003) (*citing Hensley,* 461 U.S. at 434; *Luciano*, 109 F.3d at 116)).

In reviewing the plaintiff's submissions, the court finds that the attorney time sheets are sufficiently detailed and provide an adequate contemporaneous record. *See* Hudson-Plush Decl. Ex D. The time sheets specify the date on which the work was performed, the amount of time expended, and briefly describes the nature of the work. *See id.* The plaintiff's law firm charged $225 per hour for 3.5 hours of work by an associate prior to January 1, 2011, and $250 per hour for 8.4 hours of work by the associate thereafter. For paralegals, the firm charged $80 per hour for 6.5 of work prior to January 1, 2011 and $90 per hour for 17.5 of work thereafter. Hudson-Plush Decl. ¶¶ 23-25, 29 & Ex. D.

The total number of associate hours billed, 11.9, and paralegal hours billed, 24, is reasonable for this ERISA default. The hourly rates charged for counsel and for the paralegals are reasonable in this district given the nature of the required tasks. *See Jacobson v. Peterbilt*

*Electrical Contracting, Inc.*, 553 F. Supp. 2d 211, 216-17 (E.D.N.Y. 2008); *Finkel v. Architcraft Inc.*, No. 08-CV-4597, 2010 WL 1257773, at *4 (E.D.N.Y. Feb 24, 2010), *report and recommendation adopted by* 2010 WL 1212556 (E.D.N.Y. Mar 26, 2010); *Gutman v. Klein*, No. 03-CV-1570, 2009 WL 3296072, at *2-3 (E.D.N.Y. Oct. 13, 2009), *report and recommendation adopted by* 2011 WL 683939 (E.D.N.Y. Feb 16, 2011). Therefore, on the basis of counsel's submissions, an award of $4,982.00 in attorney's fees is appropriate. Lastly, the plaintiffs have requested reasonable costs of $534.22, representing filing fees, service of process fees, and administrative costs. Hudson-Plush Decl. ¶¶ 30-31 & Exs. D-E. *See* 29 U.S.C. § 1132(g)(2)(D). Therefore, the plaintiffs should also be awarded a total of $5,516.72 in total attorney's fees and costs.

## CONCLUSION

In accordance with the above considerations, the undersigned hereby recommends that the plaintiff be awarded a total of $103,535.12 (plus $6.83 *per diem* interest starting January 29, 2011) and $5,516.72 in attorneys' fees and costs, broken down as follows:

- o $68,822.10 and $1,963.92 in interest (plus $5.11 in *per diem* interest) for unpaid contributions in the weeks ending April 21, 2010 through June 16, 2010;

- o $14,655.25 and $2,462.30 in interest (plus $1.72 in *per diem* interest) for unpaid contributions in the Audit Period;

- o $58.20 in interest for late payments to the 401(k) Plan that were paid before the lawsuit was filed;

- o $15,573.35 in liquidated damages; and

- o $5,516.72 in total attorney's fees and costs.

\*           \*           \*           \*           \*           \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified

time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g.*, *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendant by regular mail and file proof of such service in the record.**

Respectfully Submitted:

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
August 26, 2011