UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
DR. GERALD FINKEL, as Chairman of the :
Joint Industry Board of the Electrical Industry, :
: **ORDER ADOPTING IN PART**
Plaintiff, : **AND MODIFYING IN PART**
: **REPORT AND RECOMMENDATION**
-against- :
: 10-CV-4887 (DLI)(VVP)
ALLTEK SECURITY SYSTEMS :
GROUP, INC., :
:
Defendant. :
------------------------------------------------------------ x

**DORA L. IRIZARRY, U.S. District Judge:**

On October 22, 2010, Plaintiff Dr. Gerald Finkel, as Chairman of the Joint Industry Board of the Electrical Industry (the "Joint Board"), commenced this action against the defendant, Alltek Security Systems Group, Inc. ("Alltek" or "employer"), pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq*. ("ERISA"), and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, for alleged violations of collective bargaining agreements (the "CBAs"). On December 15, 2010, Plaintiff moved for the clerk's entry of default. On January 5, 2011, default was entered against the defendant and the court referred any requests for damages and/or attorney fees to United States Magistrate Judge Viktor V. Pohorelsky. On January 28, 2011, Plaintiff moved for default judgment. Magistrate Judge Pohorelsky issued a Report and Recommendation ("R & R"),[1] dated August 26, 2011, recommending the court enter default judgment and award Plaintiff a total of $103,535.12 (plus $6.83 *per diem* interest starting January 29, 2011) and $5,516.72 in attorneys' fees and costs broken down as follows: $68,822.10 and $1,963.92 in interest (plus $5.11 in *per diem* interest)

---

[1] Familiarity with the R & R, as well as the procedural history and relevant facts of this case, is assumed. (*See generally* Docket Entry 12 ("R & R"))

1

for unpaid contributions in the weeks ending April 21, 2010 through June 16, 2010; $14,655.25 and $2,462.30 in interest (plus $1.72 in *per diem* interest) for unpaid contributions in the Audit Period; $58.20 in interest for late payments to the 401(k) Plan that were paid before the lawsuit was filed; $15,573.35 in liquidated damages; and $5,516.72 in total attorney's fees and costs. (R & R at 17). On September 9, 2011, Plaintiff timely filed objections to the R & R challenging: (1) the denial of damage awards for unpaid dues assessments and loan repayments; and (2) the modification of Plaintiff's proposed calculation of interest owed on unpaid contributions. (*See* Docket Entry 14.) In further support of these damages claims, Plaintiff filed an additional declaration, (Declaration of Christina A. Sessa dated September 7, 2011 ("Second Sessa Decl.")), and attached exhibits.

As set forth below, upon *de novo* review of Plaintiff's objections and additional evidence, the R & R is modified to the extent that Plaintiff's method of calculating interest owed on the unpaid contributions is accepted. However, the court agrees with the magistrate judge that Plaintiff has not shown it is entitled to an award of the dues assessments. Accordingly, the court adopts that portion of the R & R. Having found no clear error in those portions of the R & R to which no objections are made, the court adopts the remainder of the R & R in its entirety.

**I.      Standard of Review**

Where a party objects to an R & R, a district judge must make a *de novo* determination with respect to those portions of the R & R to which the party objects. *See* FED. R. CIV. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Portions of the R & R to which the parties have not objected are reviewed for clear error. *See Orellana v. World Courier, Inc.*, 2010 WL 3861013, at *2 (E.D.N.Y. Sept. 28, 2010). The district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the

magistrate judge with instructions." FED. R. CIV. P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

**II.     Discussion**

    **A. Unpaid Dues Assessments and Loan Repayments**[2]

As part of its default motion, the Joint Board sought $710.01 in outstanding dues assessments for the weeks ending April 21, 2010 through June 16, 2010, which are monies normally used to fund the operating expenses of Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO ("Local 3"). (Declaration of Christina A. Sessa dated January 25, 2011 ("First Sessa Decl.") ¶¶ 27-29; Second Sessa Decl. ¶¶ 8-9.) Judge Pohorelsky recommended not awarding Plaintiff damages for the dues assessments because Plaintiff failed to provide evidence of an agreement obligating Alltek to remit union dues to the Joint Board on behalf of its employees. (*See* R & R at 10-11.) Plaintiff has objected, arguing that a dues assessment letter issued by the Joint Board, in conjunction with two of Alltek's payroll reports showing the defendant remitted dues on prior occasions, are more than sufficient evidence to demonstrate Alltek's agreement. (*See* Pl. Obj. at 4-5.) After *de novo* review, the court concurs with the magistrate judge and adopts his recommendation in this respect.

The Joint Board has the authority under the May 12, 2010 collective bargaining agreement (the "2010 CBA") to collect "dues assessments" that "the employer agrees or is obligated to deduct from the employees' paychecks." (First Sessa Decl. Ex. G at 21 Art II, Sec. 17; Second Sessa Decl. ¶ 6.) This memorializes what has been a long standing practice between the parties to the CBAs. (Second Sessa Decl. ¶ 7.) Neither the 2010 CBA nor the longstanding

---

[2] Subsequent to Plaintiff filing its motion for default judgment, Alltek paid the Joint Board the amounts owing for the unpaid loan repayments. (Second Sessa Decl. ¶ 17.) Accordingly, the court declines to adopt that portion of the R & R that recommends Plaintiff's damages for the unpaid loan repayments be denied, as it is now moot. *See Collazo v. Pagano*, 2008 WL 649070, at *1 (N.D.N.Y. Mar. 6, 2008) (rejecting Report and Recommendation in part as moot); *see also Allied Leather Corp. v. Interco Inc.*, 1993 WL 159970, at *5 (S.D.N.Y. May 10, 1993) (claim is moot where defendant paid amount demanded in the complaint).

practice between the parties obligate employers to remit dues assessments, but only authorize the Joint Board to collect dues where the employer so agrees. Here, the Joint Board has not shown Alltek agreed to remit the union dues sought herein.

In support of recovery for the dues assessments, Plaintiff submitted a letter from the Joint Board, dated March 13, 1997 (the "March Letter"), giving notice to employers that Local 3 members had agreed upon an increase to one percent (1%) of the dues assessment rate.[3] (First Sessa Decl. ¶ 12 & Ex. P; Second Sessa Decl. ¶ 9.) In further support, Plaintiff also submitted Alltek's weekly remittance reports, from April 7, 2010 and April 14, 2010, showing that on these two occasions, Alltek did remit dues assessments to the Joint Board at the one percent (1%) rate indicated in the March Letter. (First Sessa Decl. ¶ 19 & Ex. R; Second Sessa Decl. Ex C.) Plaintiff asserts that these submissions, along with the 2010 CBA, are more than sufficient evidence to show an agreement exists between Alltek and the Joint Board. (*See* Pl. Obj. at 5.) As authority for its assertion, Plaintiff cites *Finkel v. East End Elec. Associates, Ltd.*, 2007 WL 2572167, at *2-3 (E.D.N.Y. Aug. 31, 2007), wherein this court previously granted the Joint Board recovery of dues assessments after it submitted, *inter alia*, the March 13, 1997 dues assessment letter and payroll reports prepared by East End. However, in *East End Elec. Associates*, unlike in the instant matter, the employer agreed it had an outstanding obligation to the Joint Board, because the payroll reports prepared by East End calculated the total amounts it owed for eleven weeks of unpaid contributions which the Joint Board sought. *Id.*

Here, the Joint Board has not provided the court with similar reports prepared by Alltek acknowledging its outstanding liability for the periods of unpaid contributions. Instead, the Joint Board only points to Alltek's prior conduct in remitting dues assessments on two occasions

---

[3] The letter uses the term "working assessment" instead of "dues assessment" but "working assessment," as used in this letter, has the equivalent meaning of "dues assessment." (Second Sessa Decl. ¶ 10.)

before its delinquency, as evidence of an ongoing agreement. Such prior conduct, absent some additional evidence such as an unsigned writing obligating Alltek to remit dues, language in the CBA itself specifically obligating all signatories to remit dues, or some other form of written admission as to its ongoing liability, such as payroll reports from the delinquent contribution periods, is insufficient to show Alltek agreed to be bound to remit dues assessments to the Joint Board. *See Brown v. C. Volante Corp.*, 194 F.3d 351, 354-355 (2d Cir. 1999) (employer evinced intention to adopt unsigned CBAs specifically requiring all employers to remit assessments to employee fund where employer, *inter alia*, previously submitted sixty-one remittance reports which contained a phrase indicating that they were submitted in accordance with the CBA, consented to an audit, and sent letter to the Trustees acknowledging its responsibility to the funds); *see also Empire State Carpenters Welfare Annuity v. Conway Const. of Ithaca, Inc.*, 2010 WL 625352, at *7 (E.D.N.Y. Feb. 19, 2010) (employer's conduct demonstrated its intent to be bound to unsigned 2001 CBA requiring contributions to employee fund where employer, *inter alia*, was a signatory to prior CBAs, complied with the terms of the 2001 CBA by continuing to contribute benefits, submitted remittance reports over a two year period, agreed to an audit, and attempted to terminate its obligation to the 2001 CBA in accordance with the CBA's termination procedure).

Accordingly, Plaintiff is not entitled to an award of dues assessments and the magistrate judge properly reduced Plaintiff's recovery for unpaid contributions by the dues assessments amount.

### B. Accrual of Interest for Unpaid Contributions

Also as part of its default motion, Plaintiff proposed that, pursuant to the Joint Board's policy, interest on unpaid contributions should accrue from the payroll end date, which is a

5

Wednesday, instead of the day when required contributions are due, which is the following Tuesday. (Pl. Mem. in Supp. at 11 (citing Hudson-Plush Decl. ¶ 12); *see also* Second Sessa Decl. ¶ 18.) The magistrate judge disagreed and recalculated interest to accrue from the contribution due date – the Tuesday following the payroll end date. (R & R at 13.) With the benefit of additional evidence submitted by Plaintiff as part of its objection, the court agrees with, and adopts, Plaintiff's proposed method of interest calculation.

Pursuant to the CBAs to which Alltek is bound, the Joint Board has the power to establish rules and regulations and also has the power to modify the same. (First Sessa Decl. Exs. F at 7, G at 7; Second Sessa Decl. ¶ 19.) The CBAs further provide that the parties are bound to "the delinquency and collection procedures of the Plan and requirements of ERISA." (First Sessa Decl. Exs. F at 18, G at 19; Second Sessa Decl. ¶ 20.) The delinquency policy of the Joint Board establishes "the interest accrual date as the last day the contributions could have become due and owing, *i.e.*, […] the last day of that payroll week[.]" (Second Sessa Decl. ¶ 21.) While this language is opaque, Plaintiff has submitted in support of its objection, a July 2007 letter from the Joint Board to certain employers reminding them that late contributions "will accrue interest from the payroll ending date[.]" (Second Sessa Decl. Ex. D.) In light of this additional evidence, the court is satisfied that the Joint Board's policy is to calculate interest from the payroll end date, and that Alltek, as a signatory to the CBAs, is bound by this policy. Accordingly, the court will modify the R & R to reflect this interest accrual date.

**III.    Conclusion**

Upon due consideration, the R & R is adopted as to those portions not objected to and as to the magistrate judge's recommendation that Plaintiff not be awarded damages for dues assessments. The R & R is modified to the extent that interest on unpaid contributions shall be

calculated from the payroll end date and, as the magistrate judge's recommendation that Plaintiff not be awarded damages for loan repayments is moot, the court declines to adopt it. Accordingly, Plaintiff's motion for default judgment is granted and Plaintiff is awarded $109,098.82 (plus $9.55 in *per diem* interest starting January 29, 2011) and $5,516.72 in attorneys' fees and costs broken down as follows: $68,822.10 and $2,010.90 in interest (plus $7.83 in *per diem* interest) for unpaid contributions in the weeks ending April 21, 2010 through June 16, 2010; $14,655.25 and $2,462.30 in interest (plus $1.72 in *per diem* interest) for unpaid contributions in the Audit Period; $58.20 in interest for late payments to the 401(k) Plan that were paid before the lawsuit was filed; $15,573.35 in liquidated damages; and $5,516.72 in total attorney's fees and costs.

The Clerk of the Court is directed to enter judgment in favor of Plaintiff in accord with this Summary Order and is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
　　　　September 29, 2011

　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　　DORA L. IRIZARRY
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge